CITY OF MILWAUKEE, a municipal corporation,
Plaintiff-Respondent,

v.

MILWAUKEE POLICE ASSOCIATION and Marvin Lund,
Defendants-Appellants-Petitioners.

Supreme Court

*No. 77–693. Argued March 31, 1980.—Decided June 9, 1980.*

(Also reported in 292 N.W.2d 841.)

For the appellants-petitioners there were briefs by *Kenneth J. Murray* and *Laurie Ann Eggert,* both of Milwaukee, and oral argument by *Mr. Murray.*

For the respondent the cause was argued by *John F. Kitzke,* assistant city attorney, with whom on the briefs was *James B. Brennan,* city attorney.

DAY, J.   The Milwaukee Police Association and Marvin Lund seek review of a decision of the court of appeals[1] affirming an order of the circuit court that vacated an arbitration award ordering that Mr. Lund be transferred from patrolman to an acting detective status in the Milwaukee Police Department.

The basic dispute in this case centers around the authority of the arbitrator to make the award. The opinions of the lower courts, however, focused on the arbitrability of the grievance itself. As a result, we will also address the question of the arbitrability of the grievance. We conclude that although the grievance was arbitrable, the arbitrator lacked the authority to enter the award made. We accordingly affirm the decision of the court of appeals.

I.

Marvin Lund was a patrolman in the Milwaukee Police Department from November, 1960 until February, 1970 when he was transferred to the vice squad where he was assigned duties as "acting detective."[2]   In April, 1974 he was transferred to the detective bureau maintaining his status as an acting detective. On October 12, 1975 Mr. Lund was transferred to District No. 7 and was assigned duties as a patrolman.

---

[1] The court of appeals decision filed on October 27, 1978, is unpublished.

[2] There is no position known as "acting detective" in the recognition clause of the contract.

Mr. Lund filed a grievance alleging that his transfer to District No. 7 was a disciplinary measure in violation of the collective bargaining agreement entered into by the City of Milwaukee and the Professional Policeman's Association (now the Milwaukee Police Association) effective from November 3, 1974 to October 31, 1976.

The grievance was processed through the procedure provided for in the collective bargaining agreement. The dispute remained unresolved and the matter was brought before an arbitrator selected from a panel of arbitrators provided by the Wisconsin Employment Relations Commission. The City contended before the arbitrator that the arbitrator had no authority to grant the relief requested.

The arbitrator framed the issue to be decided as follows:

"Was the reassignment of the grievant from his assignment at the Detective Bureau to Patrolman in the 7th District proper under the terms of the parties' Collective Bargaining Agreement?"

After reviewing the evidence submitted at the hearing, the arbitrator ruled that:

"The reassignment of the grievant from his assignment at the Detective Bureau to Patrolman in the 7th District violates the terms of the parties' Collective Bargaining Agreement. The Arbitrator directs the Employer to return the grievant to the Detective Bureau effective with the date of this Award; and further directs that the grievant be placed in his former capacity of Acting Detective."

In reaching his determination that a violation of the collective bargaining agreement had occurred, the arbitrator initially concluded that the grievant had in fact

been transferred rather than merely reassigned[3] and that grievances based on transfers alleged to be unfair or which showed favoritism were arbitrable under the contract. The arbitrator also found that the motivation behind the transfer was to discipline the employee. The arbitrator, after reviewing the evidence, found that the Association challenged the transfer on disciplinary grounds ruling that the issue was therefore properly submitted to him. After finding that no charges had been filed by the Chief of Police with the Police and Fire Commission against the grievant, the arbitrator ruled that a transfer for disciplinary reasons was arbitrable pursuant to Part III, Section I. A. 1. of the agreement which provides in part:

"Matters of departmental discipline involving application of the rules or regulations of the Chief of Police which are not subject to appeal to the Board of Fire and Police Commissioners, shall constitute a grievance under the aforementioned provisions and matters of departmental discipline involving application of the rules or regulations of the Chief of Police which are subject to appeal to the Board of Fire and Police Commissioners shall not constitute a grievance under the aforementioned provisions."

The arbitrator then ruled that the discipline and transfer provision of the contract were valid and enforceable. Although there existed no "acting detective" classification under the collective bargaining agreement, the arbi-

---

[3] Although the issue as framed by the arbitrator as well as the actual award is phrased in terms of "assignment" rather than "transfer," the arbitrator based his determination as to arbitrability on whether the grievant was transferred. In his decision he stated:

"Having concluded a transfer is involved in the instant matter, and having previously concluded that transfers are covered by the terms of the Contract between the parties, it would follow that the issue in the case at bar properly falls under the jurisdiction of the Arbitrator."

trator concluded that if a violation of the contract existed, he would have the authority to order an appropriate remedy including the restoration of the grievant to his former status as an acting detective. The transfer was found to be arbitrary and therefore unfair.

## II.

The City asserts that the arbitrator did not have the authority to arbitrate the grievance filed by Mr. Lund. However, the motion to vacate the arbitration award did not challenge the authority of the arbitrator to hear the grievance.[4] The motion stated that ". . . an arbitration award was entered . . . settling a controversy that existed between the . . . parties . . . in accordance with the arbitration provisions of the Wisconsin Statutes." Nevertheless, the circuit court and the court of appeals ruled that the grievance in this case was not arbitrable.

While there is a broad presumption of arbitrability, the interpretation of the arbitration clause remains a judicial function unless the parties voluntarily submit the question of arbitrability to the arbitrator. *Intern U. Of Operating Engineers, Local Union No. 139 v. Carl A. Morse, Inc.*, 529 F.2d 574, 580 (7th Cir. 1976). From the limited record before this court, it cannot be determined whether the parties submitted the question of the arbitrability of the dispute to the final and binding decision of the arbitrator. The agreement does not expressly or impliedly give the arbitrator the authority to determine the scope of his authority to make a binding determination as to arbitrability. Although the arbi-

---

[4] Because the defendants-petitioners do not raise the issue of whether the City has waived its right to contest the arbitrability of the dispute, we proceed to the merits of whether the arbitrator had the authority to hear the grievance of Marvin Lund.

trator noted the City's objection to the power of the arbitrator to arbitrate the dispute and to restore Mr. Lund to his status as an acting detective, it is not apparent whether the arbitrator's determination on the arbitrability issue was intended to be final and binding on the parties. This can be of substantial importance because, as this court has stated:

"If the parties submitted the issue of arbitrability to the arbitrators for final and binding decision, the scope of review of the award on the issue of arbitrability would be limited, as is the scope of review of the merits of the award.

"If the parties submitted the merits to the arbitrators and at the same time challenged the arbitrability of the question and reserved the right to challenge in court an adverse ruling on arbitrability, the court would decide the issue of arbitrability *de novo." Jt. School Dist. No. 10 v. Jefferson Ed. Asso.*, 78 Wis.2d 94, 106, 253 N.W.2d 536 (1977).

Because we conclude that the grievance involved in this case was arbitrable, even upon *de novo* judicial review, we need not determine whether the issue of arbitrability of the grievance was subject to the arbitrator's final and binding decision.

In *Denhart v. Waukesha Brewing Co.*, 17 Wis.2d 44, 51, 119 N.W.2d 490 (1962), this court adopted the language from one of the decisions forming a part of the now famous "Steelworkers Trilogy"[5] which outlined the court's role in determining when an issue should be submitted to an arbitrator when the collective bargaining agreement provides that all questions of contract interpretation are for the arbitrator. The United States Supreme Court stated:

[5] *United Steelworkers Of America v. American Mfg. Co.*, 363 U.S. 564 (1960); *United Steelworkers Of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574 (1960); *United Steelworkers Of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593 (1960).

"The function of the court is very limited when the parties have agreed to submit all questions of contract interpretation to the arbitrator. It is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract. . . . In these circumstances the moving party should not be deprived of the arbitrator's judgment, when it was his judgment and all that it connotes that was bargained for." *United Steelworkers Of America v. American Mfg. Co.*, 363 U.S. 564, 567 (1960).

When the court determines arbitrability, it is limited to considering whether the arbitration clause can be construed to cover the grievance on its face and whether any other provision of the contract specifically excludes it. *Jt. School District No. 10 v. Jefferson Ed. Asso.*, 78 Wis.2d at 111.

Neither of the lower courts had the benefit of this court's recent decision in *Milwaukee Police Asso. v. Milwaukee*, 92 Wis.2d 145, 285 N.W.2d 119 (1979) when making their rulings in this case.

In *Milwaukee Police Asso. v. Milwaukee, supra,* this court had before it the same collective bargaining agreement, and hence, the same arbitration clause at issue in this case. The arbitration clause provides:

"1. Differences involving the interpretation, application or enforcement of the provisions of this Agreement or the application of a rule or regulation of the Chief of Police affecting wages, hours, or conditions of employment and not inconsistent with the 1911 Special Laws of the State of Wisconsin, Chapter 586, and amendments thereto shall constitute a grievance under the provisions set forth below."

This is an expansive arbitration clause covering a broad class of disputes arising out of the "interpretation, application or enforcement" of the agreement. In reviewing *de novo* the arbitrability of the Chief of Police's power to transfer employees under this collective bargaining agreement, the court held in *Milwaukee Police Asso. v.*

*Milwaukee,* that because the parties disagreed as to the interpretation of the Chief of Police's authority to transfer, and the authority of the Chief of Police to transfer employees was provided for in the contract, there existed a " 'difference involving the interpretation' of the Agreement." 92 Wis.2d at 153. As a result it was held that the grievance was covered by the arbitration clause and was subject to arbitration. 92 Wis.2d at 152–153.

In that case it was nowhere disputed that a transfer was involved. In this case, however, there is a dispute as to whether Mr. Lund was in fact transferred or merely "reassigned." We believe that whatever the term used, the underlying question is whether the Chief of Police was limited by the collective bargaining agreement in laterally moving Mr. Lund from acting detective to patrolman. The City also argues that the "reassignment" of the grievant was not for disciplinary reasons and that the Chief of Police had the unrestricted power to make the reassignment. Under the rationale of *Milwaukee Police Asso. v. Milwaukee, supra,* even upon a *de novo* review of the arbitrator's decision as to the arbitrability of the grievance, the grievance in this case was arbitrable because a difference involving the interpretation of the agreement has arisen. *Milwaukee Police Asso. v. Milwaukee,* 92 Wis.2d at 153.

### III.

The authority of the arbitrator to hear a grievance is not the same as the authority of the arbitrator to make a particular award and the distinction between the two concepts must remain clear. The collective bargaining agreement may permit or require the arbitrator to hear a dispute, but it may also restrict him from reaching a particular result by limiting his powers of review or

relief. Christensen, *Labor Arbitration And Judicial Oversight,* 19 Stan. L.R. 671, 686 (1967) (Book Review: R. W. Fleming, *The Labor Arbitration Process* (1965) and P. R. Hays, *Labor Arbitration: A Dissenting View* (1966)). This distinction has been recognized by this as well as other courts. *See, Milw. Bd. Sch. Dirs. v. Milw. Teachers' Ed. Asso.,* 93 Wis.2d 415, 287 N.W.2d 131 (1980); *Milwaukee Police Asso. v. Milwaukee, supra; WERC v. Teamsters Local No. 563,* 75 Wis.2d 602, 250 N.W.2d 696 (1977); *Jt. School Dist. No. 10 v. Jefferson Ed. Asso.,* 78 Wis.2d 94, 253 N.W.2d 536 (1977); *Truck Drivers & Helpers Union Local 784 v. Ulry-Talbert Co.,* 330 F.2d 562 (8th Cir. 1964); *Textile Workers Union Of America v. American Thread Co.,* 291 F.2d 894 (4th Cir. 1961); *Electronics Corp. Of Am. v. Electrical Workers Local 272,* 492 F.2d 1255 (1st Cir. 1975); *World Airways, Inc. v. International Brotherhood Of Teamsters Airline Division,* 578 F.2d 800 (9th Cir. 1978) (Per Curiam).

The dispositive question then, is whether the award directing that the grievant be transferred back to acting detective status was within the authority of the arbitrator. We start from the premise that an arbitrator's award is presumptively valid, and it will be disturbed only where its invalidity is demonstrated by clear and convincing evidence. *Milw. Bd. Sch. Dirs. v. Milw. Teachers' Ed. Asso.,* 93 Wis.2d at 422; *Stradinger v. City of Whitewater,* 89 Wis.2d 19, 37, 277 N.W.2d 827 (1979).

Judicial review of an arbitrator's decision is quite limited. The merits of the arbitration award are not within the province of courts on review. "The refusal of courts to review the merits of an arbitration award is the proper approach to arbitration under collective bargaining agreements." *United Steelworkers Of America*

*v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 596 (1960). We are therefore bound to accept the arbitrator's finding that Marvin Lund was transferred for disciplinary reasons. We will not review the arbitrator's finding that the actions of the Chief of Police constituted a transfer and not a "reassignment." The definitions of the terms "transfer" and "discipline" can be given a broad or narrow meaning, but the interpretation of those terms given by the arbitrator is the interpretation bargained for by the parties. *Denhart v. Waukesha Brewing Co.*, 17 Wis.2d at 51. The decision of the arbitrator will not be disturbed for an error of law or fact. *Joint School District No. 10 v. Jefferson Ed. Asso.*, 78 Wis.2d 94, 117–118, 253 N.W.2d 536 (1977).

The arbitrator's power to make an award is not unlimited. The power of the arbitrator is derived from the contract and is limited by the terms of the contract:

"When an arbitrator is commissioned to interpret and apply the collective bargaining agreement, he is to bring his informed judgment to bear in order to reach a fair solution of a problem. This is especially true when it comes to formulating remedies. . . . Nevertheless, an arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award." *United Steelworkers Of America v. Enterprise Wheel & Car Co.*, 363 U.S. at 597; *see also, Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 53–54 (1974).

When a grievance is properly before the arbitrator for his decision, the court will overturn the award made when there has been a perverse misconstruction or positive misconduct plainly established, or if the award is

illegal or violates a strong public policy or if there is a manifest disregard of the law. *Milw. Bd. Sch. Dirs. v. Milw. Teachers' Asso.*, 93 Wis.2d at 422; *Jt. School Dist. No. 10 v. Jefferson Ed. Asso.*, 78 Wis.2d 94, 117–118, 253 N.W.2d 536 (1977). The agreement between the parties in this case provided that the "arbitration award shall be reduced to writing, subject to Sections 298.08 through and including 298.15 of the Wisconsin Statutes." Sec. 298.10, Stats. (1973) provided for the vacation of an arbitrator's award under approximately the same circumstances allowed at common law.

"298.10. **Vacation of award, rehearing by arbitrators.** (1) In either of the following cases the court in and for the county wherein the award was made must make an order vacating the award upon the application of any party to the arbitration:

"(a) Where the award was procured by corruption, fraud or undue means;

"(b) Where there was evident partiality or corruption on the part of the arbitrators, or either of them;

"(c) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.

"(d) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made."

We must look to whether the arbitrator exceeded the limits of his power under the contract. If the arbitrator in effect undertook to amend the contract, to substitute his own discretion for that vested in one or another of the parties or if the arbitrator acted to dispense his own brand of justice the award will be vacated. *Timkin Co. v. Local Union No. 1123, United Steelworkers Of America, AFL–CIO*, 482 F.2d 1012, 1014–1015 (6th Cir.

1974) ; *Detroit Coil Co. v. Intern. Ass'n. of M. & A., Workers, Lodge #82*, 594 F.2d 575 (6th Cir.), *cert. denied* 444 U.S. 840 (1979). The arbitrator is free to give his own construction to ambiguous language in the collective bargaining agreement but he is without authority to disregard or modify plain and unambiguous provisions. *Monogahela Power Co. v. Local No. 2332 International Bro. Of El. Workers*, 566 F.2d 1196, 1199 (4th Cir. 1975). The award must "draw its essence" from the collective bargaining agreement. *Washington-Baltimore Newspaper Guild v. Bureau Of National Affairs*, 97 L.R.R.M. 3068, 3069 (D.D.C. 1978).

With these principles in mind we must analyze the relevant contract provisions to determine whether the arbitrator exceeded the outer bounds of his power.

The collective bargaining agreement in the present case provides that certain rights are to be considered "management rights." In Part II C., it is provided:

". . . C. *MANAGEMENT RIGHTS.* 1. The Association recognizes the right of the City and the Chief of police to operate and manage their affairs in all respects in accordance with the laws of Wisconsin, ordinances of the City, Constitution of the United States and Section 111.70 of the Wisconsin Statutes. The Association recognizes the exclusive right of the Chief of Police to establish and maintain departmental rules and procedures for the administration of Police Department during the term of this Agreement provided that such rules and procedures do not violate any of the provisions of this Agreement. . . .

"5. The City and the Chief of Police shall determine work schedules and establish methods and processes by which such work is performed.

"6. The City and Chief of Police shall have the right to transfer employes within the Police Department in a manner most advantageous to the City.

"7. Except as otherwise specifically provided in this Agreement, the City, the Chief of Police and the Fire and Police Commission shall retain all rights and authority to which by law they are entitled. . . .

"11. The association pledges cooperation to the increasing of departmental efficiency and effectiveness. Any and all rights concerning the management and direction of the Police Department and the police force shall be exclusively the right of the City and the Chief of Police unless otherwise provided by the terms of this Agreement as permitted by law."

To the extent provided for in the agreement these rights are vested exclusively in the City and Chief of Police, and the arbitrator has no power to substitute his judgment or make an award where the power of decision-making is vested in the management.

The agreement also limits the arbitrator's authority. The grievance and arbitration provisions of the contract detail the restrictions placed on the arbitrator.

"Part III. *GRIEVANCE AND ARBITRATION PROCEDURE* . . . II. *GRIEVANCE ARBITRATION.* . . .* D. The arbitrator shall neither add to, detract from, nor modify the language of the Agreement or of the rules and regulations in arriving at a determination of any issue presented that is proper for final and binding arbitration within the limitations expressed herein. The arbitrator shall have no authority to grant wage increases or wage decreases.

"E. The arbitrator shall expressly confine himself to the precise issues submitted for arbitration and shall have no authority to determine any other issue not so submitted to him or to submit observations or declarations of opinion which are not directly essential in reaching the determination.

"F. In reviewing any difference over application of a departmental rule or regulation under this grievance and arbitration procedure the arbitrator shall take into account the special statutory responsibilities granted to the Chief of Police under the 1911 Special Laws of the State of Wisconsin, Chapter 586, and amendments thereto. The arbitrator shall not impair the ability of the Chief of Police to operate the department in accordance with the statutory responsibilities under the Special Laws

of the State of Wisconsin, Chapter 586, and amendments thereto . . ."

Chapter 586, Laws of 1911, as amended, is found in sec. 62.50 (23), Stats. 1977, and provides:

"62.50. **Police and fire departments in first class cities** . . . (23) DUTIES OF CHIEF. The chief engineer of the fire department and the chief of police of said cities, shall be the head of their respective departments. The chief of police shall cause the public peace to be preserved and see that all laws and ordinances of the city are enforced. The chief shall be responsible for the efficiency and general good conduct of the department under his control. The chief of each department shall have the power to regulate his or her respective department and shall prescribe rules for the government of its members. Any rule or regulation prescribed by a chief shall be subject to review and suspension by the board. Each of the chief's shall have the custody and control of all public property pertaining to their respective departments and everything connected therewith and belonging thereto. . . ." *See, Milwaukee Police Asso. v. Milwaukee,* 92 Wis.2d at 154.

This court in interpreting the forerunner of this provision has stressed the breadth of the management discretion vested in the Chief of Police. The Chief "has broad powers in order to . . . supervise the members of the department." *State ex rel. Kuszewski v. Board Of F. & P. Comm.,* 22 Wis.2d 19, 25, 125 N.W.2d 334 (1963). Although other provisions of this statute limit the power of the Chief to discipline, this limitation is to be strictly construed.

"The members of the force no longer take their offices subject to being summarily dismissed, demoted, or suspended by the chief. The act is designed to abolish those measures. In that regard, the powers of the chief are limited, but he does retain all of the powers not circumscribed. . . . The retained powers of the chief are those which do not defeat the purpose or object of the act."

*State ex rel. Kuszewski v. Board Of F. & P. Comm.,* 22 Wis.2d at 24–25.

The foregoing contract provisions providing for the reservation of the right to transfer in the Chief of Police; the express acknowledgment in the contract of the Chief's statutory responsibilities under Chapter 586 and the prohibition against the impairment of these responsibilities, when examined cumulatively, give the Chief of Police unrestricted discretion over transfers within the department.

In *Milwaukee Police Asso. v. Milwaukee, supra,* this court was asked to determine whether the arbitrator exceeded his authority when devising an award which required that "when and if an opening for a police officer develops" the grievant be granted a transfer. The court held that the arbitrator exceeded his power and contract authority because the arbitrator ". . . ignored numerous provisions in the agreement giving deference to the authority and responsibilities placed upon the chief of police . . ." by statute and the collective bargaining agreement. In addition, the court found that the arbitrator by requiring that when an opening arose, a transfer be granted, in effect added to the labor agreement a provision compelling employee transfers. *Milwaukee Police Asso. v. Milwaukee,* 92 Wis.2d at 158–159.

That case, however, was not dealing with the further question presented here. The collective bargaining agreement vests authority in the arbitrator to decide grievances arising over discipline which are not subject to review by the Police and Fire Commission. Unless questions concerning the propriety of transfers are in the exclusive control of the Chief of Police, it would appear that the Chief of Police's power over transfers is limited by the arbitrator's power to resolve disciplinary grievances concerning transfers. This is not a case in which the Chief of Police has acted to limit his statutory dis-

cretion over the supervision of the department by contract; the contract at issue here expressly recognizes the reservation of power in the Chief. *See, Glendale Prof. Policemen's Asso. v. Glendale,* 83 Wis.2d 90, 107, 264 N.W.2d 594 (1978).

The arbitrator in this case incorporated in his decision a portion of an earlier arbitration decision under the same collective bargaining agreement which ruled that transfers are subject to the arbitration process. The test adopted by the arbitrator to determine whether a transfer was "improper" was whether the transfer was made unfairly or showed favoritism. The problem with this ruling is that nowhere in the contract can be found a provision allowing the arbitrator to determine whether a transfer was "unfair" or showed "favoritism." The contract states that the City and the Chief "shall have *the right* to transfer employes . . . in a manner most advantageous to the City." (emphasis added). There is nothing in the agreement to limit this right to only those transfers which the arbitrator deems fair and impartial. The arbitrator ignored the numerous contract provisions detailed above. The arbitrator, in essence, added a provision to the agreement which did not otherwise exist and thereby exceeded the powers vested in him by the contract.

The arbitrator only considered whether the transfer was unfair because he felt a higher burden was imposed upon the grievant to show unfairness in a transfer than need be demonstrated to show the transfer was a disciplinary measure for which no cause had been shown. The arbitrator in assessing his power under the contract stated that "since the contract provides that discipline shall be for cause, it would follow that the arbitrator has the authority to determine whether there was cause for the discipline, absent any other limitations in the Agreement." What the arbitrator failed to consider was that

the contract had granted the City and Chief of Police the management right to transfer employes and the agreement also recognized the rights retained in the Chief of Police by statute. The contract provision governing discipline is subject to the management rights retained. The arbitrator therefore, in effect, removed the right to transfer from that group of management rights vested in the City and the Chief of Police and placed the right to transfer under the disciplinary provisions of the contract. This is a modification of the contract clearly in excess of the arbitrator's authority under the agreement.

We therefore hold that the arbitrator exceeded his contract authority in ordering that the grievant be transferred back to acting detective status.

*By the Court.*—The decision of the court of appeals which affirmed the order of the circuit court is affirmed.

SHIRLEY S. ABRAHAMSON, J. *(dissenting)*. The majority, refusing to accept the reasoning of the circuit court and court of appeals, correctly holds that the grievance in this case was arbitrable and that the parties have bargained for the arbitrator's interpretation of the agreement and for the arbitrator's decision on the merits of the dispute.

The arbitrator found that the grievant, Lund, was employed by the city of Milwaukee as a patrolman from 1960 until February, 1970, at which time he was transferred to the Vice Squad as an acting detective. In April, 1974, Lund was transferred from the Vice Squad to the Detective Bureau, continuing as an acting detective. From April, 1974, until March, 1975, Lund was under the direct supervision of Lt. Partipilo; in March, 1975, Lund came under the direct supervision of Lt. Nueman.

On several occasions Lt. Partipilo was critical of Lund's performance. This criticism culminated on October 5, 1975, with Lt. Partipilo submitting a written re-

port to the Inspector of Detectives recommending that Lund be removed from acting detective status. On October 6, Captain Will submitted a report to the Inspector of Detectives in which he also recommended that Lund be returned to the uniform division.

On October 7, 1975, the Deputy Inspector of Detectives filed a report with the Chief of Police, recommending that Lund be transferred out of the Detective Bureau. On October 10, 1975, Lund learned that a department order had been issued on that day transferring him to patrol duty. On October 15, 1975, Lund filed a grievance, alleging that his transfer to patrol duty was a disciplinary measure in violation of the collective bargaining agreement and requesting that he be reinstated to his former position or that he be given the rank of detective. On October 16, 1976, Lt. Partipilo denied the grievance, asserting that the transfer was due to Lund's inadequate performance of duties over the past year to year and one-half.

After a careful review of Lt. Partipilo's complaints of Lund's performance, of Lund's explanations and of the full record, the arbitrator concluded (1) that Lund had been transferred from acting detective to patrol duty; (2) that Lund's transfer constituted discipline within the meaning of the collective bargaining agreement; (3) that the discipline was without cause and was therefore in violation of the agreement; (4) that the transfer was unfair; and (5) that Lund's transfer was in violation of the provisions of the collective bargaining agreement. The arbitrator directed that Lund be restored to his former status as Acting Detective.

As I understand the majority opinion, which is not unambiguous, the majority has no quarrel with the arbitrator's five conclusions, which are summarized above, relating to the merits of the grievance. The majority apparently concedes that it would not upset the arbitrator's findings. The arbitrator's findings are consistent with the generally accepted concepts of transfer and

discipline. Elkouri & Elkouri, in their text *How Arbitration Works* (3d ed. 1973), describe the relationship of "transfer" and "discipline," noting that even if an agreement explicitly recognizes broad management rights to transfer, management's right to transfer is limited if transfer is a form of discipline. The pertinent part of these commentators' discussion of the issue is as follows:

"Some agreements explicitly recognize management's rights to transfer. While such agreements sometimes make the transfer right subject to other terms of the agreement, it appears that arbitrators generally require any restriction upon the right to be clearly stated. . . .

"A transfer may be effected when the employer requires employees to rotate among jobs within their classification, or to move from one shift to another, or to move from one job to another in a different classification in the same job class, or when the employee is moved to a new machine on the same job, or to a new location for the same job.

"In the absence of a contract provision to the contrary, it has been held that the employer's right to transfer workers is not conditioned upon the willingness of the workers to be transferred, and that the employer has the right to determine whether a transfer is temporary or permanent. Moreover, management has been held to have the right and duty to transfer an employee if his presence in a given occupation creates some undue hazard for himself or others. Various other justifications have similarly been accepted by arbitrators in upholding transfers required by management. *However, the right to transfer as a form of discipline appears to be definitely limited.*" *Id.* at 530, 531. (Emphasis supplied.)

The majority's criticism of the arbitrator's award apparently goes to the remedy. The majority says "The dispositive question then, is whether the award directing that the grievant be transferred back to acting detective status was within the authority of the arbitrator." (*Supra,* p. 24) The majority answers the question it poses concluding that the arbitrator "exceeded his contract authority in ordering that the grievant be

transferred back to acting detective status." (*Supra,* p. 32).

The majority reaches the wrong result because (1) it errs in characterizing the arbitrator's remedy as an order that Lund be transferred and (2) it relies on this court's decision in *Milwaukee Police Association v. Milwaukee,* 92 Wis.2d 145, 285 N.W.2d 119 (1979), which is inapposite.

Characterizing the remedy as a transfer is erroneous. The arbitrator has not directed that Lund be transferred to a particular job or to a particular division. The arbitrator has merely directed that Lund be reinstated to his former position from which he was illegally removed; the arbitrator has merely directed that Lund be restored to the status quo which existed prior to an illegal discipline proceeding. Applying the majority's reasoning to an illegal discharge of an employee, the arbitrator could not order the employee reinstated because the arbitrator would be interfering with management's right to hire.

The *Milwaukee Police Association* case is not applicable to the instant case. In the *Milwaukee Police Association* case the officer complained that a transfer that he requested but which was denied was a grievable matter and that the arbitrator should order that the requested transfer be granted. This court noted that "[t]he arbitrator acknowledged that the chief's right to transfer employees in a manner most advantageous to the city would seem to place the subject of transfers in a non-grievable category." 92 Wis.2d at 157. Although the arbitrator himself recognized that he was going outside the agreement in handling the issue of a requested transfer, he proceeded to arbitrate the dispute about the requested transfer and to grant relief. The arbitrator ordered the officer transferred even though he recognized that the chief retains the power to transfer employees in a manner most advantageous to the city. As might be predicted, this court held in the *Milwaukee Po-*

*lice Association* case that the arbitrator's order that the officer be transferred at the first opportunity exceeded his power and contract authority because "both the statutes and the collective bargaining agreement vest authority in the chief of police to make decisions concerning transfers." 92 Wis.2d at 158.

In this case, unlike in the *Milwaukee Police Association* case, Lund is not requesting a transfer; he is objecting to an adverse transfer. In this case, unlike in the *Milwaukee Police Association* case, the arbitrator decided that there is a legitimate arbitrable grievance under the contract, that discipline was administered via a transfer, and that the employee had not been disciplined for cause. In the instant case, unlike in the *Milwaukee Police Association* case, the arbitrator relies on the collective bargaining agreement and concludes he has power to arbitrate the dispute. In this case, unlike in the *Milwaukee Police Association* case, the arbitrator does not order a requested transfer. The *Milwaukee Police Association* case is inapposite.

With the focus of the majority opinion apparently on the impact of explicit contractual restrictions on the arbitrator's remedial authority, I have attempted to find a contractual restriction on the arbitrator's remedial authority to reinstate Lund. I can find none. Although the collective bargaining agreement specifically states that "the arbitrator shall have no authority to grant wage increases or wage decreases," there is no express limitation in the agreement on the arbitrator's power to reinstate an employee to his former position if discipline was wrongfully imposed.

I concede that the agreement does not provide that if the chief illegally disciplines an employee by removing him from his position, an arbitrator may order the employee reinstated. However, the power of the arbitrator to order an employee reinstated is generally accepted as a remedy available to the arbitrator. The majority (*su-*

*pra,* p. 25) looks to *United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 597 (1960), for support of its position that the reinstatement is beyond the arbitrator's authority. However, the majority fails to quote key language from *Enterprise Wheel.* The United States Supreme Court said: "When an arbitrator is commissioned to interpret and apply the collective bargaining agreement, he is to bring his informed judgment to bear in order to reach a fair solution of a problem. *This is especially true when it comes to formulating remedies. There is a need for flexibility in meeting a wide variety of situations. The draftsmen may never have thought of what specific remedy should be awarded to meet a particular contingency."* (Emphasis supplied.)

In *Minute Maid Co. v. Citrus Workers, Local 444,* 331 F.2d 280, 281 (5th Cir. 1964), an arbitrator, finding that an employee had been wrongfully discharged, ordered that he be reinstated with back pay. The company argued that because the collective bargaining agreement did not provide for a back pay remedy, the award should not be enforced. The Fifth Circuit Court of Appeals noted that the "contract did not exclude from arbitration either the subject matter or the remedy adopted by the arbiter," and held that the essence of the award was adequately grounded in the contract. *See also, United Steelworkers of America v. United States Gypsum Co.,* 492 F.2d 713, 730 (5th Cir. 1974).

Applying the *Enterprise Wheel* test (*supra,* p. 25), I conclude that there is a sufficient nexus between the chief's breach of the agreement by wrongfully disciplining Lund and the arbitrator's remedy of reinstatement so that the arbitrator's "award is legitimate [and] it draws its essence from the collective bargaining agreement." The remedy of reinstatement is grounded in the agreement and flows logically and reasonably from the breach of agreement. For the foregoing reasons, I would hold that the award should not be vacated. I dissent.