## TEXAS & P. RY. CO. v. ST. LOUIS SOUTHWESTERN RY. CO.

No. 13346.

Circuit Court of Appeals, Eighth Circuit.

Nov. 27, 1946.

Rehearing Denied Dec. 16, 1946.

Writ of Certiorari Denied March 3, 1947.

See 67 S.Ct. 866.

Thomas Bond, of St. Louis, Mo. (Thompson, Mitchell, Thompson & Young, and Charles M. Spence, all of St. Louis, Mo., on the brief), for appellant.

Oliver J. Miller, of St. Louis, Mo. (A. H. Kiskaddon and Lashly, Lashly, Miller & Clifford, all of St. Louis, Mo., on the brief), for appellee.

Before GARDNER, WOODROUGH, and RIDDICK, Circuit Judges.

RIDDICK, Circuit Judge.

The question on this appeal is whether the appellee, an intermediate carrier, is obligated to account to appellant, the initial carrier, for the proportion of a joint freight charge claimed by appellant for the transportation of crude petroleum over a through route from Wickett, Texas, to Whiting, Indiana. Appellant filed its claim against appellee in proceedings for the reorganization of appellee. The claim was denied, and this appeal followed.

The carriers participating in the transportation were, besides appellant and appellee, the St. Louis Southwestern Railway Company of Texas, a subsidiary of appellee; four railroad companies, hereinafter referred to as the Illinois Trunk Lines, to one or the other of which appellee delivered the crude petroleum at East St. Louis, Illinois; and the Elgin, Joliet & Eastern Railway Company, which received the shipments from the Illinois Trunk Lines and delivered them to consignee at destination.

In 1927 the Illinois Trunk Lines and the parties to this action, pursuant to section 1(4) of the Interstate Commerce Act, 49 U.S.C.A. § 1(4), published a through rate applicable to the transportation of crude petroleum from Wickett to Whiting over their connecting lines, and agreed upon the division of the rate among them. The rate agreed upon was 37 cents per hundred pounds, of which 6.5 cents was allotted to the Illinois Trunk Lines and the Elgin, Joliet & Eastern, and 30.5 cents to the appellee and its subsidiary and appellant. Appellee for itself and its subsidiary and appellant agreed upon the division of the share of the joint rate coming to them in the proportions of 9.1 cents to appellee and its subsidiary and 21.4 cents to appellant. While the 37 cents rate was in effect no disputes arose concerning its division.

In March 1928 appellant began negotiations with appellee for the reduction of the rate to 32.5 cents. Appellee consented to the publication of a through rate of 32.5 cents on condition that it continue to receive for itself and its subsidiary 9.1 cents for the transportation over their lines. Apparently both appellee and appellant believed that the Illinois Lines were bound by law to participate in the reduced rate so long as the compensation awarded them under the reduced rate remained the same as that given them under the 37 cents rate. This upon the theory that, having agreed to participate in a joint rate for a division of 6.5 cents to them, the Illinois Trunk Lines were required to continue participation in a lower rate from which they received the same division until, by agreement among participating carriers or by action of the Interstate Commerce Commission under section 15(6) of the Interstate Commerce Act, 49 U.S.C.A. § 15(6), the agreed divisions had been changed. On this assumption and without submitting the matter to the Illinois Trunk Lines, appellee and appellant joined in the publication of the reduced rate to become effective September 18, 1928, and agreed upon its division in the proportions of 6.5 cents to the Illinois Lines, 9.1 cents to appellee and its subsidiary, and 16.9 cents to appellant.

It appears that the Illinois Trunk Lines had for some time prior to these events

considered the division of 6.5 cents allotted to them inequitable, because not compensatory, and that their position on this matter was known to both appellant and appellee. On August 6, 1928, the Illinois Lines notified the southwestern railroads interchanging traffic with them at East St. Louis of their decision not to continue in the division of the through rates on such traffic on the basis stated. In the notice referred to, the Illinois Trunk Lines advised connecting carriers that on and after August 15, 1928, they would demand 10 cents as a reasonable division of the joint rates applicable to traffic moving from southwest territory to Chicago points. Specific reference was made in the notice to the joint rate of 37 cents on crude petroleum from Wickett to Whiting. Appellee advised appellant of the proposed action of the Illinois Trunk Lines.

It thus clearly appears that, prior to the effective date of the reduced rate and the division agreement between appellee and appellant applicable to the reduced rate, both appellant and appellee knew that the Illinois Lines would not willingly participate in the rate on the basis of the division assigned to them by appellee and appellant. Moreover, the Illinois Trunk Lines had refused to recede from the position taken by them in the notice of August 6, 1928, despite the vigorous protests of interested connecting carriers, including appellant and appellee. Nevertheless, after the publication of the 32.5 cents rate by appellant and appellee, the appellant on its waybills accompanying shipments of crude petroleum from Wickett to Whiting stated the applicable rate to be 32.5 cents, and insisted upon divisions of the rate among connecting carriers in the proportions fixed in the agreement between it and appellee at the time of the publication of the reduced rate. But, since the Elgin, Joliet & Eastern, as destination carrier, collected the freight charges on all of the petroleum, the Illinois Lines were in a position to enforce their demand for 10 cents as a reasonable division of the 32.5 cents rate, by withholding that amount in settlements with prior carriers. Neither the appellee nor the appellant ever received the division of the reduced rate which they insisted lawfully accrued to them.

If we concede for the argument that appellant is correct in its contention that the lawful rate on crude petroleum from Wickett to Whiting was 32.5 cents, in which the Illinois Trunk Lines were bound by contract with appellant and appellee to participate for a division of 6.5 cents, a question which we do not decide, it would seem that appellant's remedy was an action against the Elgin, Joliet & Eastern, the carrier which collected all freight charges, for the recovery of the lawful division of the established rate. Compare Alton R. Co. v. United States, 287 U.S. 229, 235-236, 53 S.Ct. 124, 77 L.Ed. 275; Atlantic Coast Line R. Co. et al. v. Boston & Maine R. Co. et al., D.C., 18 F.Supp. 886, 892. This action, however, is against the appellee, an intermediate carrier, which, like the appellant, has not received the division of the reduced rate accruing to it under appellant's interpretation of applicable law. Appellant contends that because of the method adopted by appellee for the collection of that proportion of the 32.5 cents rate, which, in appellant's opinion, accrued for the transportation of petroleum from Wickett, Texas, to East St. Louis, Illinois, the appellee became obligated to appellant for the loss which appellant claims it has sustained; and that this liability is imposed by certain rules adopted by the major railroads of North America, among them the carriers participating in the transportation out of which this controversy arises, for the settlement of interline freight accounts between connecting carriers. The rules are known as the Mandatory Freight Accounting Rules and, as their title implies and the parties here agree, control the settlement of all interline freight accounts between carriers which are parties to them. Provision is made in the rules for the arbitration of disputes concerning the interpretation and application of the rules. By express provision of the rules the decision of the arbitrators is final and conclusive on the parties to an arbitration.

It is customary among the majority of North American railroads for through

shipments on joint rates to move on what is known as "through billing." In through billing a through interline waybill issued by the initial carrier accompanies each shipment from origin to destination. This through waybill shows, among other things, the origin and destination of the shipment, consignor and consignee, route of movement, the applicable rate, and the information necessary to the apportionment of revenue between connecting carriers. On shipments moving on through billing, freight charges collect, the destination carrier collects the charges from the consignee and accounts to prior carriers for their established divisions of the applicable rate. Appellant and appellee agree that the destination carrier on shipments moving on through billing is obligated under the Mandatory Freight Accounting Rules, as well as by law, to collect the lawful freight charges from the consignee, and is responsible to the other participating carriers for the distribution of the freight charges in conformity with an existing valid agreement for the division of the charges among them.

The Mandatory Freight Accounting Rules, however, authorize an alternate method for the collection of freight charges and for accounting between participating carriers on shipments moving on joint rates over the lines of connecting carriers. This method, known as the "junction settlement" plan, was adopted by appellee for all of the shipments of crude petroleum. Proceeding according to the junction settlement plan, the appellee, when a car of crude petroleum reached East St. Louis, changed the heading on the through waybill issued by appellant which read "to Whiting, Indiana," to read "to East St. Louis, Illinois." Thereafter, on delivery of the shipment to one of the Illinois Trunk Lines, the line receiving the shipment issued a new waybill for the transportation from East St. Louis to Whiting, and the transportation was completed under the new waybill. The junction settlement plan permitted appellee to make cash settlements with each of the Illinois Trunk Lines at East St. Louis at the close of each week's business, and thus enabled the appelleee to obtain ready cash which it needed for the operation of its railroad, instead of waiting for monthly settlements after delivery at Whiting as would have been the case had the shipments moved from origin to destination on appellant's through way bills.

Cash settlements between the appellee and the Illinois Trunk Lines at East St. Louis were accomplished in the following manner as provided by the Mandatory Rules. Appellee on delivering a shipment to an Illinois Trunk Line presented that carrier with a bill for that part of the joint rate chargeable to the transportation from Wickett to East St. Louis. The Illinois Trunk Line receiving a shipment from appellee was required to advance to appellee the charges accruing on the transportation from Wickett to East St. Louis, and appellee became responsible to appellant for appellant's division. The Illinois Trunk Line receiving the shipment at East St. Louis delivered the shipment to the Elgin, Joliet & Eastern, which collected from consignee at destination the full freight charge for the movement from Wickett to Whiting.

The first shipment of petroleum after the effective date of the 32.5 cents rate moved on October 19, 1928. By the agreement between appellee and appellant for the division of the 32.5 cents rate the freight charge accruing for the transportation of the crude petroleum from Wickett to East St. Louis was 26 cents per hundred pounds. Appellee, therefore, on delivery of the shipment to an Illinois Trunk Line billed that carrier for 26 cents per hundred pounds. But, in accordance with the notice of August 6, 1928, the Illinois Trunk Line receiving the shipment insisted upon 10 cents as its division of the joint rate of 32.5 cents stated in appellant's way bill. It therefore changed appellee's account rendered to show 22.5 cents as the proportion of the through rate accruing for the transportation from Wickett to East St. Louis and accounted to appellee on this basis. This course was followed by all the Illinois Trunk Lines in their settlements with appellee at East St. Louis on all shipments of crude petroleum. The result was that the appellee received 22.5 cents instead of 26 cents per hundred

pounds on crude petroleum moving from Wickett to East St. Louis, obviously an amount insufficient to pay appellee its division of 9.1 cents and appellant its division of 16.9 cents per hundred pounds. In this situation appellee divided the 22.5 cents which it received from the Illinois Trunk Lines between itself and appellee by expressing in percentages the relation of 9.1 cents and 16.9 cents to 26 cents, retained for itself 35 per cent and remitted to appellant 65 per cent of the collections from the Illinois Trunk Lines. The result was that the appellee received 7.875 cents instead of 9.1 cents and accounted to appellant for 14.625 cents in place of 16.9 cents per hundred pounds. The difference between 16.9 cents and 14.625 cents per hundred pounds applied to all shipments aggregates $64,424.46 which, together with interest, is the amount of appellant's claim.

Appellant states its case as follows:

" * * * we contend that under the Mandatory Freight Accounting Rules * * * which govern all interline settlements between Appellant and Appellee, Appellee made themselves the 'settling carrier' and became responsible for the collection of the proper revenue lawfully accruing to the junction point for the distribution to all prior lines of their agreed proportions thereof."

And again:

"These rules place the responsibility upon the 'waybill destination carrier' to collect and account for the proper revenue to 'waybill destination'. * * * Appellee was the waybill destination carrier in these waybills, the headings of which it had altered. * * * Therefore, Appellee was responsible, and that means legally responsible to all prior participating carriers, including Appellant, for the collection and proper accounting of the lawful revenue to East St. Louis, regardless of the final destination of the shipments. * * * Appellee has failed to meet its responsibility under Rule 118, and is, therefore, legally liable to Appellant for the resultant loss of revenue."

Appellant's statement of its case shows that appellant rests its claim against appellee squarely upon the Mandatory Freight Accounting Rules. The rules relied upon are Nos. 118 and 79.[1]

Appellant also admits that this question was submitted to arbitration in accordance with the procedure provided for arbitration in the Mandatory Freight Accounting Rules. To quote appellant's brief: "Being unable to get any correction from Appellee, Appellant invoked this procedure, contending that Appellant had violated Rule 118 in not collecting and reporting the proper revenue to East St. Louis, and had violated Rule 79 in not correcting its interline settlements as demanded in Appellant's Statement of Differences." But appellant now takes the position that the arbitrators did not decide the issue submitted. Appellant's position is that the arbitrators held that the decision of the question submitted to them depended upon a question of law[2] not within their jurisdiction under the rules, and that until a court of competent jurisdiction had ruled upon this question of law they could not decide the issue of the liability of appellee under the Mandatory Freight Accounting Rules.

The District Court held that the question of the liability of appellee to appel-

---

[1] Rule 118. Responsibility for Collection and Settlement of Waybills. The waybill destination carrier shall be responsible for the collection of the proper revenue to waybill destination, and for the proper reporting to all roads interested, regardless of the final destination of the shipment.

Rule 79. Statements of Differences and Correction Accounts—Basis.—Differences discovered by forwarding or intermediate carriers in waybills, abstracts, division statements, recapitulation of division statements, correction accounts and recapitulation of correction accounts or summaries, shall be promptly taken up for adjustment with the settling carrier in statement of differences and if correct shall be promptly embodied in a correction account by the settling carrier, together with differences found to which attention may not have been called by any other carrier.

[2] The question of law was the legality of the action of the Illinois Trunk Lines in exacting a division of the reduced rate greater than that provided in the division contract, i.e., the validity of the division agreement for the 32.5 cents rate.

lant under the Mandatory Freight Accounting Rules was submitted to arbitration, that the award of the arbitrators adjudicated "the lack of right of claimant (appellant) to recover against respondent (appellee) under the mandatory freight accounting rules," and that the award of the arbitrators was conclusive on this issue. The court expressly declined to rule upon the legality of the action of the Illinois Trunk Lines in exacting increased divisions of the 32.5 cents rate. Appellant contends that a decision by the District Court on the last point stated was necessary to a determination of the liability of appellee under the Mandatory Freight Accounting Rules; that the evidence established a valid contract between the Illinois Trunk Lines, appellee, and appellant for the division of the 32.5 cents rate in the proportions of 6.5 cents to the Illinois Lines and 26 cents to appellee and appellant; and that this contract being established the appellee is liable to appellant under the Mandatory Freight Accounting Rules.

We think the District Court rightly declined to rule on the validity of the division contract applicable to the 32.5 cents rate. For conceding without deciding that the facts in this case show an agreement binding on all participating carriers for the division of the 32.5 cents rate in the proportions claimed by appellant, that contract contained no provision imposing upon appellee the liability now asserted against it. The division contract, if valid and legally enforceable against the Illinois Lines, neither expressly nor by implication imposed upon appellee the obligation to collect from the Illinois Lines the divisions of the rate claimed by appellee and appellant, nor the obligation to account to the appellant for its division when not collected by appellee from the Illinois Trunk Lines. That liability, if it exists, is imposed, as appellant contends, by Rules 118 and 79 of the Mandatory Freight Accounting Rules. And whether or not the division contract is valid and enforceable at law,

the question of the liability of appellee under the Mandatory Freight Accounting Rules having been submitted to arbitration is for the arbitrators and not for the courts.

The Mandatory Freight Accounting Rules provide for arbitration af all disputes between carriers concerning the interpretation and application of the rules by the Interline Freight Accounting Arbitration Committee, whose decision is made binding on the parties to the arbitration, except that any aggrieved party may appeal to the Appeal Committee. In this case both committees handed down written opinions in the arbitration proceeding instituted by appellant. Nothing in the opinions supports appellant's contention that the issues submitted to arbitration were not decided. Each opinion concludes with the statement that the appellant has no cause of action against appellee under the Mandatory Freight Accounting Rules. The arbitration committees recognized that a dispute existed between the participating carriers as to the legality of the action of the Illinois Trunk Lines in withholding an increased division of the 32.5 cents rate. Both committees understood that the validity of the so-called division contract was in dispute between the Illinois Lines and the Southwest lines. The issues arising in that dispute were, in the opinion of the arbitrators, within the jurisdiction of either the Interstate Commerce Commission or of the courts. But the committees did not on that account hold that they were without jurisdiction to interpret and apply the Mandatory Freight Accounting Rules in the controversy before them. What they decided was that neither Rule 118 nor Rule 79 had any application on the question before them, because of the very fact that the dispute over the division of the rate existed, and this without regard to ultimate decision of that dispute by the courts or by the Commission. The Committee held that the appellee on the facts before them was required (Rule 143 [3]) to accept from the Illi-

---

[3] Rule 143. Junction Settlement Sheet.
—The outbound carrier shall prepare a junction settlement sheet, R.A.O.A. Standard Form 156, for the settlement period, embracing all freight bills received. In the case of disputed divisions, the settlement made by the outbound carrier must be accepted by the inbound car-

nois Trunk Lines the settlement tendered at East St. Louis and that appellee met its obligations to appellant under the rules by accounting to appellant (Rule 107[4]), as it did in this case. Whether the arbitration committees were right or wrong in their interpretation and application of the Mandatory Freight Accounting Rules is no concern of the courts. The controlling issue in the case having been submitted to arbitration and decided, the decision of the arbitrators is binding on the courts. Wabash R. Co. v. American Refrigerator Transit Co., 8 Cir., 7 F.2d 335, 351; McCullough et al. v. Clinch-Mitchell Construction Co., 8 Cir., 71 F.2d 17, 22; Richardson & Sons, Ltd. v. Hedger Transportation Corp., 2 Cir., 98 F.2d 55, 57.

The judgment of the District Court is affirmed.

---

rier pending agreement by traffic departments of interested carriers.

[4] Rule 107. Divisions Not Furnished— Apportionment of Revenue.—When waybills are received by destination carriers, moving under through rates for which divisions have not been furnished by the traffic departments, such waybills shall be reported in current interline freight settlement and the revenue apportioned between the carriers interested on a reasonable basis pending adjustment when correct divisions are ascertained. Notation to be made on the abstracts "Rule 107."