# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE No.: | 2021AP102 |

| | |
|---|---|
| COMPLETE TITLE: | Green Bay Professional Police Association and Andrew Weiss, |
| | Plaintiffs-Appellants-Petitioners, |
| | v. |
| | City of Green Bay, |
| | Defendant-Respondent. |

REVIEW OF DECISION OF THE COURT OF APPEALS
Reported at 399 Wis. 2d 504, 966 N.W.2d 107
PDC No: 2021 WI App 73 - Published

| | |
|---|---|
| OPINION FILED: | April 27, 2023 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | December 12, 2022 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Brown |
| JUDGE: | Kendall M. Kelley |

JUSTICES:
KAROFSKY, J., delivered the majority opinion of the Court, in which ZIEGLER, C.J., ANN WALSH BRADLEY, ROGGENSACK, DALLET, HAGEDORN, JJ., joined. ZIEGLER, C.J., filed a concurring opinion. REBECCA GRASSL BRADLEY, J., filed a concurring opinion.
NOT PARTICIPATING:

ATTORNEYS:

For the plaintiffs-appellants-petitioners, there were briefs filed by *Jonathan Cermele* and *Cermele Law, S.C.,* Milwaukee. There was an oral argument by *Jonathan Cermele.*

For the defendant-respondent, there was a brief filed by *William E. Fischer, Kyle J. Gulya,* and *von Briesen & Roper, S.C.,* Madison. There was an oral argument by *William E. Fischer.*

An amicus curiae brief was filed by *Brendan P. Matthews* and *Cermele & Matthews, S.C.,* Milwaukee, for the Milwaukee Police Association.

An amicus curiae brief was filed by *Andrew T. Phillips, Matthew J. Thome,* and *Attolles Law, S.C.,* Milwaukee, for the Wisconsin Chiefs of Police Association.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2021AP102
(L.C. No. 2019CV1248)

STATE OF WISCONSIN     :     IN SUPREME COURT

**Green Bay Professional Police Association and Andrew Weiss,**

       **Plaintiffs-Appellants-Petitioners,**

   **v.**

**City of Green Bay,**

       **Defendant-Respondent.**

**FILED**

**APR 27, 2023**

Sheila T. Reiff
Clerk of Supreme Court

KAROFSKY, J., delivered the majority opinion of the Court, in which ZIEGLER, C.J., ANN WALSH BRADLEY, ROGGENSACK, DALLET, HAGEDORN, JJ., joined. ZIEGLER, C.J., filed a concurring opinion. REBECCA GRASSL BRADLEY, J., filed a concurring opinion.

REVIEW of a decision of the Court of Appeals. *Affirmed.*

¶1 JILL J. KAROFSKY, J. The Green Bay Police Department (the Department) disciplined Andrew Weiss for violating several Department policies and demoted him from his position as a detective to a patrol officer. The demotion resulted in Weiss's loss of an $80 monthly stipend. Weiss[1] challenged this

---

[1] The Green Bay Professional Police Association brought this action against the City of Green Bay along with Weiss. As their arguments are identical and briefed together, we refer only to Weiss throughout the opinion.

disciplinary action in an arbitration proceeding. The arbitrator concluded that the Department had cause to take its chosen disciplinary action. Additionally, the arbitrator concluded that the Department's disciplinary procedures did not violate Weiss's constitutional due process rights.[2] The circuit court[3] confirmed the arbitration award, and the court of appeals affirmed.[4] We afford a high level of deference to arbitration decisions because of the contractual nature of arbitration agreements. Given this deference, the arbitrator did not exceed his powers, and so we likewise affirm.

## I. BACKGROUND

¶2 In the fall of 2017, Weiss, a detective for the Department, accessed sensitive information via the Green Bay Electronic Records Program (GERP) regarding two sexual assault cases that the Department was investigating. Weiss was not involved in either investigation. After obtaining the sensitive information, Weiss used a personal cellphone to provide information to a third party. After launching an internal investigation, the Department issued a formal complaint alleging that Weiss violated the following four Department policies: Media Relations (§ 322.4); Media Requests (§ 322.6(a)); Unauthorized Disclosure (§ 320.5.6(a)); and Conduct Unbecoming

---

[2] See U.S. Const. amends. V, XIV.

[3] The Honorable Kendall M. Kelley of the Brown County Circuit Court presided.

[4] Green Bay Pro. Police Ass'n v. City of Green Bay, 2021 WI App 73, 399 Wis. 2d 504, 966 N.W.2d 107.

2

an Officer (§ 320.5.9(n)). The Department held an investigative interview with Weiss and gave Weiss the opportunity to address the allegations. Weiss admitted both accessing information on GERP and then using a personal cell phone to relay information to a friend.

¶3 The following month, the Department conducted a second interview with Weiss and provided him with an amended formal complaint alleging two additional violations of the Department policy regarding the use of personal communication devices (§§ 701.2 & 701.5(e)). At that interview, investigators asked Weiss to turn over his phone logs for the relevant time period. The investigators allowed Weiss time to discuss the request with his union and its attorney before meeting for a third time. At the third meeting, Weiss refused to provide the requested phone records and the investigators gave him a copy of the Department policy regarding cooperation with personnel complaint investigations (§ 1008.2).

¶4 One month later, the Department issued Weiss a final notice[5] informing him that the Department was "considering a serious level of discipline." The notice listed four policy violations: Media Relations (§ 322.4); Media Requests

---

[5] Both the Department and Weiss refer to this notice and accompanying hearing as the "Loudermill notice" and "Loudermill hearing" in reference to Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532 (1985), which held that oral or written notice and opportunity to respond was required prior to the termination of the subject public employee who could only be terminated for cause.

3

(§ 322.6(a)); Unauthorized Disclosure (§ 320.5.6(a)); and Conduct Unbecoming an Officer (§ 320.5.9(n)). The notice referenced Weiss's admission that he accessed case information on GERP and then provided information to a friend. A final hearing was held that same day, and Weiss was allowed to address the allegations.

¶5 The following month the Department issued its disciplinary decision in which it determined that Weiss violated the following policies: Unauthorized Disclosure (§ 320.5.6(a)); Conduct Unbecoming an Officer (§ 320.5.9(n)); Use of Personal Communication Devices (§§ 701.2 & 701.5(e)); and Failure to Cooperate in an Investigation of Personnel Complaint (§ 1008.2). As a result of these violations, the Department demoted Weiss from his position as a detective to a position as a patrol officer, resulting in the loss of an $80 per month stipend associated with the detective assignment.

¶6 Weiss filed a grievance with the Green Bay Personnel Committee which was denied. Weiss then sought arbitration, arguing that the Department did not have cause to discipline him and that his due process rights under Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532 (1985), were violated because he was ultimately disciplined for three policy violations that were not included in the Department's final notice——Use of Personal Communication Devices (§§ 701.2 & 701.5(e)) and Failure to Cooperate in an Investigation of Personnel Complaint (§ 1008.2). The arbitrator determined that the Department had cause, as required by the collective bargaining agreement, to discipline

4

Weiss by removing him from his detective assignment. The arbitrator concluded that the discipline was warranted because Weiss had violated all referenced Department policies except for Conduct Unbecoming an Officer.[6]

¶7 The arbitrator also addressed Weiss's due process argument as follows:

> The reliance Weiss puts in Loudermill is misplaced. In Loudermill, the court balanced competing interests specific to the discharge of a public employee. The weight accorded to Loudermill varies depending on the severity of the disciplinary action taken. Subsequent cases have confirmed that a neutral pre-termination adjudicator is not required where there is also a post-termination administrative procedure. Locurto v. Safir, 264 F.3d 154 (2nd Cir. 2001); Schacht v. Wisconsin Dept. of Corr., 175 F.3d 497 (7th Cir. 1999). In the present case, the arbitrator serves as the post-disciplinary administrative procedure and satisfies due process requirements under Loudermill, particularly given that the disciplinary action taken was short of discharge.

¶8 Weiss challenged the arbitration award in circuit court, arguing that the award manifestly disregarded the law with regards to the due process issue under Loudermill. The circuit court denied Weiss's request to vacate the award and granted the City of Green Bay's request to confirm the arbitration award. The court of appeals affirmed.

---

[6] The arbitrator decided that Weiss's actions did not fit the behavior historically understood to be conduct unbecoming an officer, and that the violation of this section was duplicative of his other violations.

5

## II. ANALYSIS

¶9 In determining whether an arbitration award is confirmed or vacated, we independently interpret and apply Wis. Stat. § 788.10(1) (2021-22).[7] Racine Cnty. v. Int'l Ass'n of Machinists & Aerospace Workers Dist. 10, AFL-CIO, 2008 WI 70, ¶11, 310 Wis. 2d 508, 751 N.W.2d 312. The choice to arbitrate, at its core, is a contract between the parties intended to keep a dispute out of the court system. Borst v. Allstate Ins. Co., 2006 WI 70, ¶61, 291 Wis. 2d 361, 717 N.W.2d 42. As such, the court's role in reviewing an arbitrator's award is generally limited to ensuring that the parties received the arbitration process for which they bargained. Racine Cnty., 310 Wis. 2d 508, ¶11. In that light, Wis. Stat. § 788.10(1) sets out specific circumstances under which the court must vacate an arbitration award. As relevant here, courts must vacate an arbitration award if the "arbitrators exceed[] their powers." § 788.10(1)(d). Arbitrators exceed their powers when: (1) they demonstrate "perverse misconstruction" or "positive misconduct," (2) they manifestly disregard the law, (3) the award is illegal, or (4) the award violates a strong public policy. Racine Cnty., 310 Wis. 2d 508, ¶11.

¶10 We reverse an arbitration award as manifestly disregarding the law "when the arbitrator[] fail[s] to examine and apply the relevant law" because parties to arbitration have

---

[7] All subsequent references to the Wisconsin Statutes are to the 2021-22 version unless otherwise indicated.

"a legitimate expectation that the governing law [will] be followed and applied properly." Orlowski v. State Farm Mut. Auto. Ins. Co., 2012 WI 21, ¶¶37-38, 339 Wis. 2d 1, 810 N.W.2d 775. However, we will not reverse an arbitration award for "mere errors of judgment as to law or fact" on the part of the arbitrator. Joint Sch. Dist. No. 10, City of Jefferson v. Jefferson Ed. Ass'n, 78 Wis. 2d 94, 117, 253 N.W.2d 536 (1977).

¶11 Weiss primarily argues that the arbitrator exceeded his powers because the arbitrator manifestly disregarded the law when he determined that the Department provided adequate notice to Weiss under Loudermill.[8] Weiss bases this claim on the fact that the Department's final notice did not list three of the Department policies for which he was ultimately disciplined, depriving Weiss of his opportunity to respond. Weiss contends that the failure to include those policies in the final notice violated the due process requirements set out in Loudermill.

¶12 Importantly, we need not decide whether Weiss was afforded all the process due to him. We need determine only whether the arbitrator exceeded his powers under Wis. Stat. § 788.10(1)(d) by manifestly disregarding the law. Although it may be difficult to define exactly what it means to "manifestly

---

[8] Weiss also claims that the arbitrator exceeded his powers under Wis. Stat. § 788.10(1)(d) because the arbitration award "violates strong public policy" and "conflicts with the governing law." However, these arguments are almost entirely duplicative of his argument that the arbitrator manifestly disregarded Loudermill. Because we conclude that the arbitrator did not manifestly disregard Loudermill, these additional arguments also fail.

disregard the law," we know that this standard does not entitle arbitration participants to de novo court review of an arbitrator's interpretation of the law. See City of Oshkosh v. Oshkosh Pub. Libr. Clerical and Maint. Emp.: Union Loc. 796-A, 99 Wis. 2d 95, 104, 299 N.W.2d 210 (1980) ("Having agreed to be bound by the arbitrator's determination, the arbitrator has the 'authority' to err and a mistake of judgment is plainly not grounds for vacating an award under sec. 298.10(1)(d)."[9]). Arbitrators are bound to follow precedent, Racine Cnty., 310 Wis. 2d 508, ¶34, but they are not expected to anticipate how a court might apply or extend that precedent when faced with novel arguments or fact scenarios. Parties do not have the same "legitimate expectation" regarding new applications of the law that they have in established applications. See Orlowski, 339 Wis. 2d 1, ¶38.

¶13 Loudermill, the precedent that Weiss argues the arbitrator manifestly disregarded, provides guidance on what pre-termination process an employer must afford a public employee who can be discharged only for cause. 470 U.S. at 535. In Loudermill, the Cleveland Board of Education terminated a security guard after discovering he had previously been convicted of a felony but did not disclose that felony in the application process. Id. The employee was provided no pre-termination process whatsoever where he could assert his defense

---

[9] Wisconsin Stat. § 298.10(1)(d) is the identical predecessor statute to § 788.10(1)(d).

to the allegations.[10]  Id.  In holding that some pre-termination process was due, the Court emphasized that "[a]n essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case[,]'" and "that an individual be given an opportunity for a hearing before he is deprived of any significant property interest."  Id. at 542 (quoting Mullane v. Cent. Hanover Bank & Tr. Co., 339 U.S. 306, 313 (1950) & Boddie v. Connecticut, 401 U.S. 371, 379 (1971)).

¶14 The Court emphasized that the "formality and procedural requisites for the hearing can vary, depending upon the importance of the interests involved and the nature of the subsequent proceedings."  Id. at 545 (quoting Boddie, 401 U.S. at 378).  Recognizing the importance of a person's interest in retaining employment, the Court held that the following pre-termination procedures were constitutionally required: (1) "oral or written notice of the charges" against the employee with "an explanation of the employer's evidence;" and (2) an opportunity for the employee to "present his side of the story" either in person or in writing before the termination decision is made. Id. at 546.

---

[10] The employee explained in post-termination proceedings that he thought his conviction was for a misdemeanor rather than a felony.

9

¶15 At the outset, we note that the specific process outlined in Loudermill may not govern in this case.[11] Unlike the public employee in Loudermill, Weiss was not terminated——he was reassigned within the Department and lost an $80 per month stipend——which implicates a different property interest than the interest addressed in Loudermill. Our focus on Loudermill stems from Weiss's argument, which is limited to the arbitrator's application of Loudermill. Consequently, we address whether the arbitrator's application of Loudermill demonstrates a manifest disregard of the law.

¶16 The arbitrator directly addressed Weiss's Loudermill arguments by explaining that "the weight accorded to Loudermill varies depending on the severity of the disciplinary action taken." Weiss offers no argument for why this statement is inaccurate, let alone how this statement manifestly disregarded Loudermill. At best, Weiss's position could be seen as a request to extend Loudermill's pre-termination process requirements to less serious forms of discipline. However, the arbitrator is not bound to extend Loudermill in this way.

¶17 The arbitrator then determined that, in light of his view of Loudermill, the process the Department afforded to Weiss——which included notice of all of Weiss's alleged policy violations, opportunities to be heard at four in-person hearings

---

[11] See Gilbert v. Homar, 520 U.S. 924, 930 (1997)) ("Due process is flexible and calls for such procedural protections as the particular situation demands." (quoting Morrissey v. Brewer, 408 U.S. 471, 481 (1972))).

prior to the Department's disciplinary decision, and opportunity to bring post-disciplinary review through a Green Bay Personnel Committee grievance and arbitration——was constitutionally adequate. The arbitrator did not manifestly disregard Loudermill in doing so, and Weiss received the arbitration he bargained for. Thus, he is contractually bound by the arbitrator's decision.

### III. CONCLUSION

¶18 The arbitrator did not exceed his powers by manifestly disregarding the law when he determined that Weiss was afforded the constitutional process he was due under Loudermill. As such, Weiss received the arbitration he bargained for, and the arbitration award was appropriately confirmed.

*By the Court.*—The decision of the court of appeals is affirmed.

11

¶19 ANNETTE KINGSLAND ZIEGLER, C.J. *(concurring).* I agree with the majority that no grounds exist in this case for vacating the arbitrator's decision, and I therefore join the majority opinion. I write separately to address the atextual nature of the "manifest disregard" standard and to request that, in future cases, parties include the arbitration agreement as a part of the circuit court record.

¶20 Arbitration agreements are not special. They are contracts just like any other. As is true with all contracts, our task in cases concerning arbitration awards is to review the arbitration agreement and determine whether the parties received the arbitration they bargained for. See Midwest Neurosciences Assocs., LLC v. Great Lakes Neurosurgical Assocs., LLC, 2018 WI 112, ¶40, 384 Wis. 2d 669, 920 N.W.2d 767 (quoting Joint Sch. Dist. No. 10 v. Jefferson Educ. Ass'n, 78 Wis. 2d 94, 101, 253 N.W.2d 536 (1997)) ("Arbitration agreements are 'a matter of contract.'"); Emps. Ins. of Wausau v. Jackson, 190 Wis. 2d 597, 610, 527 N.W.2d 681 (1995) ("Arbitration is essentially contractual . . . ."); Wis. Auto Title Loans, Inc. v. Jones, 2005 WI App 86, ¶8, 280 Wis. 2d 823, 696 N.W.2d 214 (alteration in original) (quoting Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 24 (1991)) ("The Federal Arbitration Act's purpose is 'to reverse the longstanding judicial hostility to arbitration agreements . . . and to place arbitration agreements upon the same footing as other contracts.'"). This task is

1

exceedingly difficult when, as here, the agreement containing the terms for arbitration is absent from the record.

¶21 The Wisconsin Arbitration Act ("WAA") helps define the circumstances where parties did not receive the arbitration they bargained for by establishing several grounds for vacating an arbitral award. These grounds include where "the award was procured by corruption, fraud or undue means"; "there was evident partiality or corruption on the part of the arbitrators"; "the arbitrators were guilty of misconduct"; or, most relevant here, "the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made." Wis. Stat. § 788.10(1). The parties to this case agree that the arbitrator exceeded his powers if he "manifestly disregarded the law," and the majority correctly applies this standard for that reason.

¶22 However, this "manifest disregard" language is wholly absent from the statutory text. The "manifest disregard" standard instead originates from dicta in the United States Supreme Court's decision in Wilko v. Swan, 346 U.S. 427, 436 (1953), overruled on other grounds by Rodriguez de Quijas v. Shearson/Am. Express, Inc., 490 U.S. 477 (1989). The Court in Wilko appears to have simply described how arbitrators might exceed their powers as defined by a choice-of-law provision in an arbitration agreement. After Wilko, the "manifest disregard" standard became seemingly untethered from the text of arbitration agreements, taking on a life of its own as the

2

standard for reviewing essentially all challenges to arbitral awards without regard to the language in the underlying contract. Parties involved in requests to vacate arbitral awards must submit the arbitration agreement to the circuit court so the court may determine the scope of the arbitrator's powers and confirm whether applying the "manifest disregard" standard is appropriate. Without the arbitration agreement, we may not be able to determine whether the parties received the arbitration they bargained for.

## I. THE "MANIFEST DISREGARD" STANDARD IN WISCONSIN.

¶23 In 1931, the Legislature enacted the WAA, "which attempted to invest the courts of this state with power to specifically enforce an agreement to arbitrate future disputes." Dunphy Boat Corp. v. Wis. Empl. Rels. Bd., 267 Wis. 316, 325, 64 N.W.2d 866 (1954). Relevant to this case, the WAA also identified grounds for vacating an arbitral award, and the text remains identical to this day:

(1) In either of the following cases the court in and for the county wherein the award was made must make an order vacating the award upon the application of any party to the arbitration:

(a) Where the award was procured by corruption, fraud or undue means;

(b) Where there was evident partiality or corruption on the part of the arbitrators, or either of them;

(c) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced;

3

> (d) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made.

§ 2, ch. 274, Laws of 1931 (codified at Wis. Stat. § 788.10).

¶24 Conspicuously absent from this text is the phrase, "manifest disregard." Regardless, we have repeatedly described our review of arbitral awards using the "manifest disregard" standard without explaining where this standard came from. See, e.g., McAdams v. Marquette Univ., 2018 WI 88, ¶29, 383 Wis. 2d 358, 914 N.W.2d 708; Marlowe v. IDS Prop. Cas. Ins. Co., 2013 WI 29, 346 Wis. 2d 450, 828 N.W.2d 812; Orlowski v. State Farm Mut. Ins. Co., 2012 WI 21, 339 Wis. 2d 1, 810 N.W.2d 775; Sands v. Menard, Inc., 2010 WI 96, ¶48, 328 Wis. 2d 647, 787 N.W.2d 384; Baldwin-Woodville Area Sch. Dist. v. W. Cent. Educ. Ass'n-Baldwin Woodville Unit, 2009 WI 51, ¶24, 317 Wis. 2d 691, 766 N.W.2d 591; Racine County v. Int'l Ass'n of Machinists & Aerospace Workers Dist. 10, AFL-CIO, 2008 WI 70, ¶11, 310 Wis. 2d 508, 751 N.W.2d 312; Franke v. Franke, 2004 WI 8, ¶24 n.8, 268 Wis. 2d 360, 674 N.W.2d 832; Lukowski v. Dankert, 184 Wis. 2d 142, 149, 515 N.W.2d 883 (1994); City of Madison v. Madison Pro. Police Officers Ass'n, 144 Wis. 2d 576, 586-87, 425 N.W.2d 8 (1988); Nicolet High Sch. Dist. v. Nicolet Educ. Ass'n, 118 Wis. 2d 707, 713 n.3, 348 N.W.2d 175 (1984); City of Milwaukee v. Milwaukee Police Ass'n, 97 Wis. 2d 15, 25-26, 292 N.W.2d 841 (1980); Milwaukee Bd. of Sch. Dirs. v. Milwaukee Tchrs' Educ. Ass'n, 93 Wis. 2d 415, 422, 287 N.W.2d 131 (1980); Glendale Pro. Policemen's Ass'n v. City of Glendale, 83 Wis. 2d 90, 99 n.2, 264 N.W.2d 594 (1978); Joint Sch. Dist. No.

4

10, City of Jefferson v. Jefferson Educ. Ass'n, 78 Wis. 2d 94, 117-18, 253 N.W.2d 536 (1977).

¶25 The first time we used the "manifest disregard" standard was in Scherrer Construction Co. v. Burlington Memorial Hospital, 64 Wis. 2d 720, 221 N.W.2d 855 (1974). Scherrer Construction presented the issue, "What is the scope of judicial review of arbitration awards?" Id. at 725. Rather than examining the language of Wis. Stat. § 788.10 to answer this question, Scherrer Construction instead reviewed how this court described the standard for reviewing arbitral awards in previous cases. Id. at 726-28. We concluded, "[T]his court has consistently held[] the scope of review of such matters is extremely limited," id. at 726, and expressed a general standard for reviewing arbitral awards:

> These statements are consistent with the views expressed in Domke on Commercial Arbitration, the leading treatise in the field. The author states that to vacate an arbitration award, the court must find not merely an error in judgment, but "perverse misconstruction or positive misconduct . . . plainly established'," "'manifest disregard of the law'," or that the award itself "violates public policy," "is illegal," or that "the penal laws of the state will be violated."

Id. at 729 (footnotes omitted). Without clearly explaining how or whether this standard was based in the language of the WAA, Scherrer Construction apparently adopted "manifest disregard of the law" from Domke on Commercial Arbitration as the standard for reviewing all arbitral awards. According to that treatise, the standard's origin "lies in dicta from the Supreme Court's decision in Wilko v. Swan." Martin Domke et al., 2 Domke on

5

Commercial Arbitration § 39:16 (2022). In continued search of how this standard came about, I turn next to federal law.

## II. THE "MANIFEST DISREGARD" STANDARD'S ORIGIN IN FEDERAL LAW.

¶26 In 1925, Congress enacted the Federal Arbitration Act ("FAA") in order to "abolish the common law rule that arbitration agreements were not judicially enforceable." Cost Brothers, Inc. v. Travelers Indem. Co., 760 F.2d 58, 60 (3d Cir. 1985); accord Pub. L. No. 68.41, 43 Stat. 883 (1925) (codified at 9 U.S.C. §§ 1-16). The FAA "was specifically aimed at the historical problems of courts' refusing to honor contractual arbitration agreements" and "was intended to make arbitration agreements specifically enforceable upon the terms established by the parties." Dickinson v. Heinold Sec., Inc., 661 F.2d 638, 645 (7th Cir. 1981) (citation omitted). But the Act also identifies grounds for vacating an arbitrator's decision:

(1) where the award was procured by corruption, fraud, or undue means;

(2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). Apart from its use of the Oxford comma, this is the exact same language as appears in the Wisconsin Arbitration Act. See Wis. Stat. § 788.10(1).

¶27 The United States Supreme Court first discussed the grounds for vacating an arbitral award under the FAA in Wilko v. Swan. Wilko involved a customer's suit against a securities brokerage firm under the Securities Act of 1933, alleging fraudulent inducement. Wilko, 346 U.S. at 428-29. The securities brokerage firm, "[w]ithout answering the complaint, . . . moved to stay the trial of the action pursuant to § 3 of the [FAA] until an arbitration in accordance with the terms of identical margin agreements was had." Id. at 429.

¶28 Notably, Wilko did not address whether to vacate an arbitral award at all. By the time the case reached the Supreme Court, no arbitration had yet taken place. The issue was instead whether "an agreement to arbitrate a future controversy is a 'condition, stipulation, or provision binding any person acquiring any security to waive compliance with any provision' of the Securities Act which § 146 declares 'void.'" Id. at 430. The Court concluded such an agreement is void, a holding later overturned by Rodriguez de Quijas, 490 U.S. 477. While discussing how the effectiveness of buyer protections under the Securities Act "is lessened in arbitration as compared to judicial proceedings," the Court noted the high standard for vacating an arbitral award:

> Power to vacate an award is limited. While it may be true, as the Court of Appeals thought, that a failure of the arbitrators to decide in accordance with the provisions of the Securities Act would 'constitute

7

grounds for vacating the award pursuant to section 10 of the Federal Arbitration Act,' that failure would need to be made clearly to appear. <u>In unrestricted submission, such as the present margin agreements envisage, the interpretations of the law by the arbitrators in contrast to manifest disregard are not subject, in the federal courts, to judicial review for error in interpretation.</u>

<u>Wilko</u>, 346 U.S. at 435-37 (emphasis added) (footnotes omitted). This is where the "manifest disregard" language first appeared.

¶29 After the <u>Wilko</u> decision, "manifest disregard" seemed to take on a life of its own. As the Supreme Court has observed, <u>Wilko</u>'s cryptic language caused much confusion and varying approaches to reviewing arbitral awards in the years since:

> Maybe the term "manifest disregard" was meant to name a new ground for review, but maybe it merely referred to the § 10 grounds collectively, rather than adding to them. See, e.g., <u>Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.</u>, 473 U.S. 614, 656 (1985) (Stevens, J., dissenting) ("Arbitration awards are only reviewable for manifest disregard of the law, 9 U.S.C. §§ 10, 207"); <u>I/S Stavborg v. National Metal Converters, Inc.</u>, 500 F.2d 424, 431 [(2d Cir. 1974)]. Or, as some courts have thought, "manifest disregard" may have been shorthand for § 10(a)(3) or § 10(a)(4), the paragraphs authorizing vacatur when the arbitrators were "guilty of misconduct" or "exceeded their powers." See, e.g., [<u>Kyocera Corp. v. Prudential-Bache Trade Servs., Inc.</u>, 341 F.3d 987, 997 (9th Circ. 2003)].

<u>Hall St. Assocs., L.L.C. v. Mattel, Inc.</u>, 552 U.S. 576, 585 (2008). However, the Court has not attempted to clarify the meaning of "manifest disregard," how it fits into the FAA's language, or whether it is an extra-statutory ground for vacating arbitral awards. See <u>Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.</u>, 559 U.S. 662, 672 n.3 (2010) ("We do not decide

8

whether 'manifest disregard' survives our decision in [Hall Street Associates, 552 U.S. 576] as an independent ground for review or as a judicial gloss on the enumerated grounds for vacatur set forth at 9 U.S.C. § 10.").

### III. "MANIFEST DISREGARD" IS LIKELY NOT A UNIVERSAL STANDARD OF REVIEW.

¶30 Several aspects of the Wilko opinion indicate that the United States Supreme Court might not have intended for "manifest disregard" to be a general standard of review for all arbitral awards.

¶31 First, the Court used the phrase "manifest disregard" in passing as dicta. The issue was whether the parties agreed to arbitrate. There was no arbitral award for the Court to review, and no need to determine the permissible scope of review. Wachovia Sec., LLC v. Brand, 671 F.3d 472, 480 (4th Cir. 2012) ("The origins of modern manifest disregard . . . likely lie in dicta from the Supreme Court's decision in Wilko . . . .").

¶32 Second, none of the authorities cited in Wilko appear to support the proposition that "manifest disregard" is the general standard for reviewing arbitral awards. Wilko collected several sources cited in footnote 24 in support of the "manifest disregard" dicta. Wilko, 346 U.S. at 437 n.24. Rather than recognizing a general standard of review, these authorities instead seem to recognize a reviewing court's ability to vacate an arbitral award in part depends on the scope of submission to

9

the arbitrator as stated in the arbitration agreement.[1] One of the cited cases, Kleine v. Catra, most comprehensively explains how the standard of review stems from the contract language:

[1] See, e.g., Burchell v. Marsh, 58 U.S. (17 How.) 344, 349 (1854) (emphases added) ("If an award is within the submission, and contains the honest decision of the arbitrators, after a full and fair hearing of the parties, a court of equity will not set it aside for error, either in law or fact. In this case, one of the parties sued the other for debt, who, in his turn, claimed damages for the manner in which he was sued. The submission was broad enough to cover all these demands on either side."); United States v. Farragut, 89 U.S. (22 Wall.) 406, 413-14 (1874) (stating "the whole controversy was submitted to three arbitrators" and reviewing the terms of the arbitration agreement); Tex. & P. Ry. Co. v. St. Louis Sw. Ry. Co., 158 F.2d 251, 256-57 (8th Cir. 1946) (discussing authority of the arbitrators under rules established by contract); The Hartbridge. N. of Eng. S.S. Co. v. Munson S.S. Line, 62 F.2d 72, 73 (2d Cir. 1932) (emphasis added) (quoting Wilkins v. Allen, 62 N.E. 575, 576 (N.Y. 1902)) ("Where the merits of a controversy are referred to an arbitrator selected by the parties, his determination, either as to the law or the facts, is final and conclusive; and a court will not open an award unless perverse misconstruction or positive misconduct upon the part of the arbitrator is plainly established, or there is some provision in the agreement of submission authorizing it."); Mut. Benefit Health & Accident Ass'n v. United Cas. Co., 142 F.2d 390, 393 (1st Cir. 1944) ("It is the contention of the Association that the decision of the arbitrator is not binding on it, because he did not follow the terms of submission . . . ."); Wesley A. Sturges, A Treatise on Commercial Arbitrations and Awards § 218 (1930) ("Judicial opinion, as it is expressed in the cases, is uniformly to the effect that under an unrestricted submission arbitrators are not required to decide 'according to law.' They may disregard the 'strict letter of the law.'"); Note, Judicial Review of Arbitration Awards on the Merits, 63 Harv. L. Rev. 681, 685 (1950) (emphasis added) ("[T]he general view, both at common law and by statute, is that the courts will not review for its wisdom or soundness the principle selected by the arbitrator, unless his discretion in making that selection is limited by the terms of the submission agreement."); Archibald Cox, The Place of Law in Labor Arbitration, 34 Chi. Bar Rec. 205, 207 (1953) (arguing arbitrators should apply the governing law as a judge would, but nonetheless recognizing "[t]he power of arbitrators differs with the breadth of the provision").

> If the parties wish to reserve the law for the decision of the court, they may stipulate to that effect in the submission; they may restrain or enlarge its operation, as they please. If no such reservation is made in the submission, the parties are presumed to agree, that every thing, both as to law and fact, which is necessary to the ultimate decision, is included in the authority of the referees.
>
> Under a general submission, therefore, the arbitrators have rightfully a power to decide on the law and the fact; and an error in either respect ought not to be the subject of complaint by either party, for it is their own choice to be concluded by the judgment of the arbitrators. Besides, under such a general submission, the reasonable rule seems to be, that the referees are not bound to award upon the mere dry principles of law applicable to the case before them.

14 F. Cas. 732, 735 (C.C.D. Mass. 1841). Wilko's cited authorities therefore may instead support the idea that the standard of review for arbitral awards depends on the contract, meaning there is no universal standard.

¶33 Finally, Wilko itself apparently did not purport to establish "manifest disregard" as a universal standard. The Court only said the standard for reviewing an arbitral decision for legal error is "manifest disregard" "[i]n unrestricted submissions, such as the present margin agreements envisage." Wilko, 346 U.S. at 436. Whether the applicable standard is "manifest disregard" seems instead to depend on the language in the arbitration agreement.

¶34 Unlike the record in this case, Wilko helpfully includes the contract language defining the scope of submission to the arbitrator:

> Any controversy arising between us under this contract shall be determined by arbitration pursuant

11

> to the Arbitration Law of the State of New York, and under the rules of either the Arbitration Committee of the Chamber of Commerce of the State of New York, or of the American Arbitration Association, or of the Arbitration Committee of the New York Stock Exchange or such other Exchange as may have jurisdiction over the matter in dispute, as I may elect. Any arbitration hereunder shall be before at least three arbitrators.

Id. at 432 n.15. This is a choice-of-law provision, which defines which jurisdiction's law the arbitrator is required to apply. Based on this reading of Wilko, so long as the arbitrator applied this law, the parties received the arbitration they bargained for. However, if the arbitrator did not apply the law described in the choice-of-law provision——in other words, manifestly disregarded the law——then the parties did not receive the arbitration they bargained for. See James M. Gaitis, Clearing the Air on "Manifest Disregard" and Choice of Law in Commercial Arbitration: A Reconciliation of Wilko, Hall Street, and Stolt-Nielsen, 22 Am. Rev. Int'l Arb. 21, 22 (2011) ("[T]he advent of the phrase manifest disregard in American case law and commentary is an unfortunate and unnecessary adjunct to evaluating the enforceability of choice-of-law provisions in agreements to arbitrate. . . . [M]anifest disregard of the law is nothing more than a loosely used catchall misnomer that should be forever abandoned in favor of a simple and clear pronouncement mandating the enforcement, to one degree or another, of choice-of-law provisions governing agreements to arbitrate.").

¶35 This formulation seems to fit neatly with the statutory vacatur standard. A reviewing court may vacate an

12

arbitral award "[w]here the arbitrators exceeded their powers." Wis. Stat. § 788.10(1)(d); 9 U.S.C. § 10(a)(4). One must look to the arbitration agreement to discern the scope of the arbitrators' powers. 6 C.J.S. Arbitration § 101 (2023) (footnotes omitted) ("Except to the extent that an arbitrator's power may derive from a statute mandating arbitration, or a court order, the scope of an arbitrator's authority is determined by the arbitration agreement . . . ."). Where an arbitrator fails to abide by a choice-of-law provision, and therefore manifestly disregards the law, it may be that the arbitrator exceeded his powers, and a reviewing court may vacate the award.[2]

## IV. PARTIES MUST INCLUDE ARBITRATION AGREEMENTS IN THE RECORD.

¶36 In certain cases, it may be that "manifest disregard" is the proper standard for reviewing challenges to arbitral awards. But whether that is the case may depend on how the parties defined the arbitrator's powers in the arbitration agreement, and a reviewing court likely cannot know the scope of

---

[2] This explanation of "manifest disregard" does not necessarily run contrary to the Supreme Court's decision in Hall Street Associates, L.L.C. v. Mattel, Inc., 552 U.S. 576 (2008). In Hall Street, the Court concluded the grounds for vacatur under the FAA are exclusive and cannot "be supplemented by contract." Id. at 578. The arbitration agreement in that case permitted district court "review for legal error," which the Court concluded was a supplemental ground for vacatur in violation of the FAA. Id. at 578-80. Though parties cannot supplement the statutory grounds for vacatur under the FAA, they may be free to define the arbitrator's powers as they wish.

13

the arbitrator's powers without first seeing the arbitration agreement.

¶37 In the present case, the arbitration agreement appears absent from the record. The closest we have in the record is a provision of the collective bargaining agreement stating, "The decision of the arbitrator shall be limited to the subject matter of the grievance. The arbitrator shall not modify, add to or delete from the express terms of this Agreement. The arbitrator's decision shall be final and binding." This somewhat establishes the scope of the arbitrator's powers, but it contains no language stating how the arbitrator was to arrive at a decision. Such a contract provision does not appear in the record, and we have no indication as to whether one even exists. Nonetheless, the parties agree that the arbitrator would have exceeded his powers if he were to manifestly disregard the law, and the majority correctly applies the "manifest disregard" standard for that reason.

¶38 In future cases, however, parties must ensure the record contains the contract language establishing the scope of the arbitrator's powers. Arbitration agreements are no different from all other contracts. Our duty is to read the contract language and ensure the parties received the arbitration they bargained for. The arbitration agreement may very well call for us to apply a "manifest disregard" standard—or it may not. Either way, fulfilling our duty to enforce the arbitration agreement as written becomes nearly impossible when the parties omit it from the record.

14

¶39 For the foregoing reasons, I respectfully concur.

¶40 REBECCA GRASSL BRADLEY, J. *(concurring).* Although the majority treats Cleveland Board of Education v. Loudermill, 470 U.S. 532 (1985) as the lodestar in cases involving the due process rights of public employees deprived of a property interest, in this case it isn't. As the arbitrator noted, Andrew Weiss's reliance on Loudermill is "misplaced." Mathews v. Eldridge, 424 U.S. 319 (1976) governs the due process analysis but the majority doesn't even mention it. Accordingly, I respectfully concur but do not join the majority opinion.

¶41 In Loudermill, a school board terminated a security guard because he did not disclose in his employment application that he had been convicted of a felony. 470 U.S. at 535. Under state law, a security guard could be terminated only for cause. Id. Accordingly, the terminated security guard had a constitutionally-protected property interest in continued employment under binding precedent. Id. at 535-41.

¶42 The terminated security guard sued, alleging he was not given an opportunity to respond to the charge of dishonesty prior to his termination. Id. at 536. He claimed he mistakenly thought he had been previously convicted of a misdemeanor, not a felony, and that this mistaken belief should have mitigated his discipline. Id. at 535.

¶43 The United States Supreme Court held the terminated security guard stated a due process claim under the Fourteenth Amendment to the United States Constitution, relying heavily on its previous decision in Mathews. In that case, the Court set

1

forth a three-factor test to determine the amount of process due:

> (1) "the private interest that will be affected by the official action";
>
> (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and
>
> (3) "the Government's interest, *including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail*."

Mathews, 424 U.S. at 335 (citing Goldberg v. Kelly, 397 U.S. 254, 263-71 (1970)). In Loudermill, the Court merely applied the Mathews test to a specific set of facts, ultimately concluding both notice and a hearing were required before termination. 470 U.S. at 546. The Court said little about these requirements, probably because the facts of the case warranted a narrow holding. It did explain, however, that notice may be provided in writing or orally, and a hearing, while "necessary," "need not be elaborate." Id. at 545-46.

¶44 The Court's application of the Mathews test in Loudermill provides no guidance as to the test's proper application in this case. Regarding the first factor, the "private interest," the Court repeatedly emphasized that the case involved termination; in this case, Weiss was merely demoted. In fact, the words "terminated," "termination," "pretermination," and "post-termination" collectively appear twenty-nine times in the Loudermill majority opinion. The first sentence of the opinion states, "we consider what pretermination

2

process must be accorded a public employee who can be discharged only for cause." Id. at 535. Similarly, the concluding paragraph begins, "[w]e conclude that all the process that is due is provided by a pretermination opportunity to respond, coupled with post-termination administrative procedures as provided by . . . [state law]." Id. at 547-48. In applying the first factor, the Court emphasized the gravity of a job loss:

> [T]he significance of the private interest in retaining employment cannot be gainsaid. We have frequently recognized the severity of depriving a person of the means of livelihood. While a fired worker may find employment elsewhere, doing so will take some time and is likely to be burdened by the questionable circumstances under which he left his previous job.

Id. at 543 (citations omitted). Throughout the opinion, the Court focused on the significance of losing employment.

¶45 The private interest at stake in this case is obviously less than in Loudermill. Weiss will lose $80 a month as a result of his demotion, a small fraction of his salary, whereas the security guard in Loudermill lost his entire salary. Additionally, Weiss will not face the less-tangible burdens associated with termination. He will not have to look for employment elsewhere and accordingly will not have to explain to potential employers why he is no longer working for the Green Bay Police Department. The stigma associated with demotion is substantially less than the stigma associated with termination. The decision to demote Weiss has a quantifiably and qualitatively smaller effect on his private interest than the

3

decision to fire in Loudermill had on the private interest of the terminated security guard.

¶46 The Loudermill Court's application of the second factor——"the risk of an erroneous deprivation" and the "probable value" of additional "procedural safeguards"——is similarly inapplicable in this case. The Court noted:

> [S]ome opportunity for the employee to present his side of the case is recurringly of obvious value in reaching an accurate decision. Dismissals for cause will often involve factual disputes. Even where the facts are clear, the appropriateness or necessity of discharge may not be; in such cases, the only meaningful opportunity to invoke the discretion of the decisionmaker is likely before the termination takes effect.

Id. (citations omitted). The Court stated that a hearing could be "informal"——the point of the hearing, it explained, is to "alert[]" the employer "to the existence of disputes about facts and arguments[.]" Id. at 543 n.8 (quoting Goss v. Lopez, 419 U.S. 565, 583-84 (1975)).

¶47 With respect to the second factor, this case is distinguishable from Loudermill on multiple grounds. Loudermill involved a classic dispute of fact: Did the terminated security guard know he had been convicted of a felony? Unlike Loudermill, this case involves no such dispute——Weiss admitted he gave confidential information to a friend. See majority op., ¶2.

¶48 Additionally, Weiss received four in-person hearings prior to being demoted, while the terminated security guard in Loudermill alleged he did not receive a pretermination hearing. See id., ¶17. Weiss does not dispute he received a hearing.

4

Instead, he argues the final notice did not cite some of the specific policies he was ultimately disciplined for violating. See id., ¶11. The Court in Loudermill did not discuss that category of due process claim. In the particular context of employment termination, the Court determined that a "tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." 470 U.S. at 546 (citations omitted).

¶49 Weiss's notice argument suffers from two further flaws: he focuses on the final notice, but nothing in Loudermill suggests notice must be given in a single, formal document. Weiss had either oral or written notice of each policy he was alleged to have violated, as the majority notes. Majority op., ¶17. Whether a notice even has to cite a specific policy is questionable. Cf. Kohlbeck v. Reliance Const. Co., 2002 WI App 142, ¶12 n.3, 256 Wis. 2d 235, 647 N.W.2d 277 ("[L]egal theories need not be fully developed, or even expressly identified, at the pleading stage." (citing Murray v. City of Milwaukee, 2002 WI App 62, ¶12 n.6, 252 Wis. 2d 613, 642 N.W.2d 541)).

¶50 Lastly, Loudermill's application of the third factor, "the Government's interest," is immaterial. The Court reasoned:

> [A]ffording the employee an opportunity to respond prior to termination would impose neither a significant administrative burden nor intolerable delays. Furthermore, the employer shares the employee's interest in avoiding disruption and erroneous decisions; and until the matter is settled, the employer would continue to receive the benefit of

5

> the employee's labors. It is preferable to keep a qualified employee on than to train a new one. A governmental employer also has an interest in keeping citizens usefully employed rather than taking the possibly erroneous and counterproductive step of forcing its employees onto the welfare rolls. Finally, in those situations where the employer perceives a significant hazard in keeping the employee on the job, it can avoid the problem by suspending with pay.

470 U.S. at 544-45. The Court's analysis of the third factor places great weight on the purported benefit the government receives by retaining a qualified employee pending a hearing. In this case, the Department held four hearings; it did not lose the benefit of Weiss's labor; and Weiss remained gainfully employed in a different position. Obviously, the government did not perceive any hazard in keeping Weiss on the job; the department only demoted him.

¶51 In summary, Weiss has not explained how the arbitrator erred. He was afforded a great deal of process, and Loudermill does not entitle him to more. The Court in Mathews even noted, "[d]ue process is flexible and calls for such procedural protections as the particular situation demands." 424 U.S. at 334 (quoting Morrissey v. Brewer, 408 U.S. 471, 481 (1972)). Despite the fact-intensive nature of the Mathews test, Weiss latches onto one particular application of that test and asks this court to take the rare step of setting aside an arbitrator's decision based on that application. The application he cites, Loudermill, does not fit the facts of this case and therefore provides no guidance; accordingly, Weiss's argument fails.

6

¶52 "[I]t is this court's function to develop and clarify the law." State ex rel. Wis. Senate v. Thompson, 144 Wis. 2d 429, 436, 424 N.W.2d 385 (1988) (citations omitted). Although litigants often treat Loudermill as the benchmark by which to determine whether a disciplined government employee received due process, it set the standard only for cases involving a terminated government employee. The majority should have taken the opportunity to clarify that Loudermill represents but one application of Mathews, which governs the analysis of whether the government satisfied due process in depriving an individual, including a public employee, of a property interest. Although the majority reaches the right result, it applies the wrong case. I therefore respectfully concur.